O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NORBERTO VEGA-ALVARADO, | ) | CV 09-5591-RSWL (AJWx) |
| Plaintiff, | ) | **RULING AND ORDER** |
| v. | ) | |
| ERIC H. HOLDER, JR. | ) | |
| Defendant. | ) | |

The above matter is a declaratory judgment action pursuant to 8 U.S.C. § 1252(b)(5)(B) to determine the nationality of Plaintiff Norberto Vega-Alvarado.  On January 4, 2011, this matter commenced in a Bench Trial before this Court.  After giving full consideration to the testimony presented at Trial, the deposition transcripts lodged with the Court, the joint exhibits received into evidence and the oral and written

1

arguments of the Parties, the Court **NOW FINDS AND RULES AS FOLLOWS:**

I.      **Background**

Plaintiff Norberto Vega-Alvarado ("Plaintiff") was born in Guadalajara, Mexico on June 6, 1959, of unmarried parents. [Ex. 8 at 40.]  His father, Eustaquio Agustin Vega ("Agustin"), was a United States Citizen born in Santa Rita, New Mexico on April 3, 1921.[1] [Ex. 1 at 4.]  Agustin, who passed away in November 2006, moved to El Zapote de Cestau, Mexico ("El Zapote") with his parents when he was a child. [Ex. 2 at 5.]  In 1962, Agustin brought Plaintiff to the United States and Plaintiff was raised in California by his father. [Ex. 14 at 000394.]

On August 29, 2006, the United States Department of Homeland Security served Plaintiff with a Notice to Appear, charging him with removability as an alien pursuant to Section 237(a)(2)(B)(I) of the Immigration and Nationality Act ("INA")[2] due to his 2004 conviction

---

[1] Plaintiff's mother, Isabel Alvarado Serrano, was born in Sayula, Jalisco, Mexico. [Ex. 9 at 47.]

[2] Section 237(a)(2)(B)(I) of the Immigration and Nationality Act, current version at 8 U.S.C. § 1227(a)(2)(B)(i), authorizes the removal of "any alien who at any time after admission has been convicted of a violation of ... any law or regulation of a State ... relating to a controlled substance...."

of possession of a controlled substance.[3] [Ex. 14 at
000412-000417.]   In the removal proceedings that
subsequently took place during 2007 in Immigration
Court, Plaintiff argued that he was not removable under
Section 237 because he derived United States
citizenship at the time of his birth through his United
States citizen father. [Ex. 14 at 000267, 000301.]

In June 2007, the Immigration Judge ("IJ")
concluded that Plaintiff was removable because he had
not presented sufficient evidence to establish
derivative citizenship, finding that Plaintiff had
failed to demonstrate that his father was physically
present in the United States for the requisite period
of time. [Ex. 14 at 000248-000251.]   Plaintiff
subsequently appealed this determination to the Board
of Immigration Appeals ("BIA"), and on January 29, 2008
the BIA remanded the case back to the Immigration Court
for consideration of additional evidence in support of
Plaintiff's claim of United States citizenship. [Ex. 14
at 000002, 000034, 000042.]   On February 26, 2008,
Plaintiff filed a motion to terminate these
proceedings. [Ex. 14 at 000048.]   On May 12, 2008, the
IJ denied this motion and ordered that Plaintiff be
removed to Mexico. [Ex. 14 at 000047-000050.]

---

[3] Plaintiff was convicted on September 23, 2004 in
the Superior Court of California of possession of
heroin, in violation of California Health and Safety
Code § 11350(a), and sentenced to two years in prison.
[Ex. 14 at 000413.]

3

Plaintiff appealed this decision to the BIA, and on August 7, 2008 the BIA dismissed Plaintiff's appeal. [Ex. 14 at 000002-000003.]

On August 15, 2008 Plaintiff filed petition for review with the Ninth Circuit Court of Appeals from the final order of removal that was issued by the BIA.[4] Defendant Government ("Government") subsequently filed a motion with the Ninth Circuit to transfer the case to this Court for a *de novo* hearing and determination on Plaintiff's claim to derivative citizenship, pursuant to 8 U.S.C. § 1252(b)(5)(B).[5] [Ex. 7.]  On June 18, 2009 the Ninth Circuit granted this motion [1].

**II.     Legal Standard**

Foreign birth "gives rise to a presumption that the person so born is an alien." Corona-Palomera v. INS, 661 F.2d 814, 818 (9th Cir. 1981).  However, an individual born abroad may seek to establish a claim to

_____

[4] Plaintiff was deported to Mexico in August 2008 while his appeal was pending and before Plaintiff obtained a stay of removal from the Ninth Circuit.

[5] Under 8 U.S.C. § 1252(b)(5)(B), when the court of appeals finds that "a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceedings to the district court ... for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of title 28, United States Code." 8 U.S.C. § 1252(b)(5)(B). See also Chau v. INS, 247 F.3d 1026, 1029 (9th Cir. 2001).

4

citizenship by proving by a preponderance of the
evidence that he or she derived citizenship through his
or her parent's United States citizenship.  <u>See</u> 8
C.F.R. § 341.2(c)(2010).  <u>See also</u> <u>Berenyi v. Dist.</u>
<u>Dir., INS</u>, 385 U.S. 630, 637 (1967).

In determining derivative citizenship, the Court
must apply the law that was in effect at the time of
Plaintiff's birth. <u>See</u> <u>Scales v. INS</u>, 232 F.3d 1159,
1162-63 (9th Cir. 2000).  <u>See also</u> <u>United States v.</u>
<u>Ahumanda-Aquilar</u>, 189 F.3d 1121, 1124 (9th Cir. 1994)
("[t]he applicable law for transmitting citizenship to
a child born abroad when one parent is a U.S. citizen
is the statute that was in effect at the time of the
child's birth")(quotations omitted)).  In 1959, the
year of Plaintiff's birth, the applicable law is former
Section 307(a)(7) of the INA, 8 U.S.C. § 1401(a)(7).
According to this statute,

(a) The following shall be nationals and citizens
    of the United States at birth: ...

(7) a person born outside of the geographical
    limits of the United States ... of parents one
    of whom is an alien, and the other a citizen of
    the United States who, prior to the birth of
    such person, was physically present in the
    United States or its outlying possessions for a
    period or periods totaling not less than ten

years, at least five of which were after
attaining the age of fourteen years.

8 U.S.C. § 1401(a)(7) (1952)(current version at 8
U.S.C. § 1401(g)).  Therefore, in order for Plaintiff
to establish that he derived citizenship from his
father Agustin, he must show by a preponderance of the
evidence that: 1) his father was born a United States
citizen and 2) his father was physically present in the
United States for at least ten years before the year of
Plaintiff's birth, at least five of which were after
his father attained the age of fourteen.[6]

Physical presence under this statute has its
literal meaning and is computed by actual time spent in
the United States.  Moreover, the parent's physical
presence does not have to be continuous and the
parent's physical presence in the country can be proved
through evidence such as employment or military
records, deeds, mortgages and/or leases, affidavits of
third parties having actual knowledge of physical
presence, bank records, and tax payments.  See Alcarez-

_____

[6] If the child claiming derivative citizenship was
born out of wedlock, as is the case here, the
applicable law in 1959 further required that the
citizen father establish paternity by legitimation. 8
U.S.C. § 1409(a) (1952) (current version at 8 U.S.C. §
1409(a)).  However, the Parties have stipulated that
Agustin legitimated Plaintiff prior to his twenty-first
birthday under the laws of their state of domicile,
California, and therefore Plaintiff meets this
legitimation requirement.

6

<u>Garcia v. Ashcroft</u>, 293 F.3d 1155, 1158 (9th Cir.
2002). <u>See</u> <u>also</u> 8 C.F.R. § 103.2(a).

**III.    Discussion**

    The Parties have stipulated that the sole issue
before this Court is whether Plaintiff can meet his
burden of proving by a preponderance of the evidence
that his father was physically present in the United
States for at least ten years before the year of
Plaintiff's birth in 1959, five years of which were
after his father attained the age of fourteen in 1935.
[Ex. 6 at 12-13.]  Accordingly, the relevant date range
in this proceeding is from 1921 to 1959, with five of
these years being from 1935 to 1959.

    Plaintiff argues that the evidence proves that it
is more likely than not that Agustin was physically
present in the United States for this requisite period
of time.  Specifically, Plaintiff contends that the
evidence proves that Agustin lived in the United States
as a child for more than five years after his birth and
that every year from the early 1940s until at least
1959, Agustin would spend six to twelve months working
in the United States as a field worker, eventually
participating in the Bracero Program.[7]  Therefore,

---

    [7] The Bracero Program was a seasonal commuter
program that "allowed Mexican laborers into the United
States for temporary agricultural work from 1951-1964."
<u>United States v. Hernandez-Bautista</u>, 293 F.3d 845, 851
n. 13 (5th Cir. 2002).

7

Plaintiff contends that the total cumulative time
Agustin spent in the United States during these years
more than meets the physical presence requirement of
Section 307(a)(7) of the INA.

The Court finds that Plaintiff has not met his
burden of establishing by a preponderance of the
evidence that his father was physically present in the
United States for the requisite period of time under
the derivative citizenship statute. <u>See</u> 8 U.S.C. §
1401(a)(7) (1952)(current version at 8 U.S.C. §
1401(g)).  Therefore, Plaintiff has failed to meet his
burden of establishing that he derived United States
citizenship through his father Agustin.

1.   <u>Evidentiary Objections</u>

Plaintiff has submitted to the Court designations
of Maria Rosario Carrera ("Carrera") and Jovita Banda
Bermejo's ("Banda") deposition testimony, offered by
Plaintiff at Trial in lieu of their live testimony.  As
an initial matter, the Court addresses the Government's
evidentiary objections with regard to statements made
in these deposition testimonies.  Specifically, the
Government has submitted objections to various
statements that are contained in these deposition
testimonies on the grounds that these statements in
question constitute inadmissible hearsay.[8]

---

[8] During Trial, the Government made similar
objections to witness testimony regarding statements
that Agustin had previously made to Plaintiff's

1       Hearsay is defined as an out of court statement
2   offered into evidence to prove the truth of the matter
3   asserted, and is inadmissible unless an exception
4   applies.  <u>See</u> Fed. R. Evid. 801, 802.  Here, many of
5   the statements that Plaintiff has designated in the two
6   deposition testimonies, as well as the witness
7   testimony Plaintiff sought to provide during Trial,
8   discuss statements made by Agustin regarding his time
9   in the United States and his overall reputation in the
10  community for being a field worker and bracero in the
11  United States from the 1940s to 1950s.

12      The Court finds that these statements constitute
13  hearsay, as they are out of court statements offered to
14  prove the truth of the matter asserted: that Agustin
15  spent a considerable amount of time working in the
16  United States during the 1940s and 1950s as a field
17  worker and a bracero.  Moreover, as discussed below,
18  the Court finds that these statements are not subject
19  to any hearsay exception.  As such, they are
20  inadmissible under Federal Rule of Evidence 802.[9]

21

22  witnesses concerning the time he allegedly spent in the
23  United States, as well as witness testimony regarding
    Agustin's reputation in the community as a field worker
24  and a bracero worker.  The Court excluded much of this
25  testimony at Trial for the reasons discussed in this
    Ruling.

26
27     [9] Specifically, this Court finds the following
    excerpts of the two depositions inadmissible under the
28  hearsay rule: 1) in Maria Rosario Carrera's deposition
    testimony, Exhibits 2 and 3 and Pages 41:1-23, 45:18-

1    Plaintiff argued in his Trial Brief and at Trial
2    that any statements made by Agustin regarding his
3    personal history and the time he spent in the United
4    States, as well as any testimony regarding Agustin's
5    reputation in the community regarding these matters,
6    fall within the hearsay exception for statements made
7    by an unavailable declarant regarding his personal or
8    family history and the exception for statements about
9    an individual's reputation within the community. See
10   Fed. R. Evid. 803(19), 804(b)(4)(A).  Accordingly, the
11   Court will address each of these arguments.

12          A.   The Court Finds That Agustin's Statements
13               Regarding His Time In The United States
14               Are Inadmissible As Hearsay.

15   The Court first finds that any testimony concerning
16   statements made by Agustin regarding his time and work
17   in the United States is hearsay that does not fall
18   within any exception, and is therefore inadmissible.

19   Under Federal Rule of Evidence 804(b)(4)(A),
20   hearsay is admissible if the declarant is unavailable
21   and the statement concerns the declarant's personal or
22   family history.  Fed. R. Evid. 804(b)(4)(A). See also
23   United States v. Olafson, 213 F.3d 435, 441 (9th Cir.
24   2000).  A declarant is considered unavailable as a
25   witness if he is "unable to be present or to testify at
26
27   46:4, 61:5-24, 62:1-11; 2) in Jovita Banda Bermejo's
28   deposition testimony, Exhibits B, C and D and Pages
     66:8-22, 68:1-22, 69:1-11, 78:1-16.

1  the hearing because of death."  Fed. R. Evid.

2  804(a)(4).  Therefore, as Agustin passed away in

3  November 2006, he is considered an unavailable

4  declarant. [Ex. 2.]

5      If the declarant is unavailable, Rule 804(b)(4)(A)

6  specifically provides that "a statement concerning the

7  declarant's own birth, adoption, marriage, divorce,

8  legitimacy, relationship by blood, adoption, or

9  marriage, ancestry, or other similar fact of personal

10 or family history" shall not be considered hearsay.

11 Fed. R. Evid. 804(b)(4)(A).

12      However, the Court finds that this Rule encompasses

13 statements that relate only to matters of pedigree,

14 such as the dates of a birth, marriage, or death, and

15 the fact and degree of family relationships.  United

16 States v. Carvalho, 742 F.2d 146, 151 (4th Cir. 1984).

17 See also United States v. Hernandez, 105 F.3d 1330,

18 1332 (9th Cir. 1997).

19      The Court therefore finds that Agustin's statements

20 concerning his time and work in the United States do

21 not constitute "personal or family history" within the

22 meaning of this exception. See Fed. R. Evid.

23 804(b)(4)(A).  Specifically, Agustin's statements do

24 not concern matters of pedigree, such as the fact or

25 date of a birth, marriage or death, nor do they relate

26 to the existence of a ceremony or family relationship.

27 Instead, the questions asked at Trial and the excerpts

28 at issue here in the two depositions deal with the

circumstances and background of Agustin's alleged work
and travels in the United States as a field worker and
a bracero.   However, courts have held that these types
of questions and purported statements are simply
outside the scope of this limited exception.

For example, in <u>United States v. Carvalho</u>, the
Fourth Circuit Court of Appeals held that statements
concerning the circumstances behind the unavailable
declarants' marriage, namely the motivation and purpose
for entering into the marriage, were not statements
concerning personal or family history that fell within
the meaning of this exception.   742 F.2d at 151.   As
such, the Court finds that the testimony and statements
here concerning the circumstances and background of
Agustin's alleged time in the United States do not fall
within the scope of this exception. <u>See</u> <u>Tevlin v.</u>
<u>Kessman</u>, 215 A.D. 844 (N.Y.A.D. 1926) (holding that the
evidence admitted as to the "residence of a former
owner of the premises was hearsay and was not justified
by the rule as to evidence of pedigree").

Plaintiff argues that these statements are simply
statements regarding Agustin's citizenship, and are
therefore admissible.   However, while Plaintiff is
correct that statements by an unavailable declarant
regarding his or her citizenship have been held to fall
within this exception, the Court finds that this is
limited to when the statement concerns the declarant's
nationality or the country of his or her citizenship,

not the background and circumstances of the declarant's time and work in the country. <u>See</u> <u>United States v. Olafson</u>, 213 F.3d 435, 441 (9th Cir. 2000)(finding that a statement by the unavailable declarants that they were citizens of Mexico fell within the scope of this hearsay exception).

Accordingly, the Court finds that the testimony and excerpts here regarding Agustin's previous statements about his time and work in the United States are hearsay not subject to the exception under Federal Rule of Evidence 804(b)(4)(A), and are therefore inadmissible.

        B.    <u>The Court Finds That Statements Regarding Agustin's Reputation Within The Community As A Bracero Are Inadmissible As Hearsay.</u>

Plaintiff also submits various excerpts from Carrera and Banda's deposition testimony, and attempted to introduce testimony at Trial, regarding Agustin's reputation in the community with regard to his time in the United States and his work as a field worker and a bracero.[10]   The Government also objects to these

---

[10] For example, Plaintiff submits an exhibit to Banda's deposition testimony in which she states she knew "with certainty" that Agustin worked in the United States from the 1940s to 1950s "because in our small community everyone knew each other's business," and that she remembered "hearing people ... talk about how Agustin was a U.S. citizen by birth and that he was working in the U.S. picking cotton as a contract worker." [Banda Dep., Ex. B at 000085.]

statements on the basis that they constitute
inadmissible hearsay.

Under Rule 803(19), "[r]eputation among members of a
person's family by blood, adoption, or marriage, or
among a person's associates, or in the community,
concerning a person's birth, adoption, marriage,
divorce, death, legitimacy, relationship by blood,
adoption, or marriage, ancestry, or other similar fact
of personal or family history" is not excluded by the
hearsay rule. Fed. R. Evid. 803(19).

The Court finds that the statements that fall
within this exception under Federal Rule of Evidence
803(19) are similar to those statements that are
admissible under Federal Rule of Evidence 804(b)(4)(A):
statements concerning matters of pedigree such as
marriage, time or place of birth or death, and
paternity. See United States v. Jean-Baptiste, 166
F.3d 102, 110 (2d Cir. 1999). As such, for the reasons
stated above, the Court finds that this Rule does not
apply to statements regarding facts such as a person's
background, time, or work in another country.

Therefore, the statements contained in the
depositions and the purported testimony at Trial
concerning Agustin's reputation in the community as a
field worker and a bracero and his time in the United
States do not fall within this exception, and are
inadmissible as hearsay. See Fed. R. Evid. 803(19).

14

2.   <u>The Court Finds That Plaintiff Does Not Meet</u>
     <u>His Burden Of Proving Agustin's Physical</u>
     <u>Presence In The United States.</u>

Plaintiff's evidence here regarding Agustin's physical presence in the United States consists primarily of the witness testimony presented at Trial and excerpts from the deposition testimony that Plaintiff offered at Trial in lieu of live testimony.[11] Plaintiff argues this evidence proves Agustin was in the United States for at least the minimum amount of time required under the derivative citizenship statute: ten years prior to Plaintiff's birth in 1959, with five of those years being after Agustin attained the age of fourteen in 1935.

The Court finds that Plaintiff has not met his burden to establish Agustin's physical presence in the United States for the minimum amount of time required under the derivative citizenship statute.

The Court first finds that Plaintiff sufficiently establishes that Agustin was physically present in the United States for five years prior to his fourteenth

---

[11] Plaintiff stresses that the Government has not put forth any evidence to rebut Plaintiff's claim of derivative citizenship. However, this argument is misplaced, as Plaintiff bears the burden at all times to prove his claim to citizenship and the onus is not on the Government to establish that Plaintiff is *not* a citizen. <u>See</u> <u>United States v. Hodulik</u>, 44 Fed. Appx. 656, 660-61 (9th Cir. 2002).

15

birthday.[12]   However, the Court finds that Plaintiff's
evidence is insufficient to meet his burden of proving
that Agustin was physically present in the United
States for a period of five years between 1935 and
1959, after the year of his fourteenth birthday and
prior to the year of Plaintiff's birth.   Therefore, the
Court finds that Plaintiff fails to show that he meets
the requirements for establishing his derivative
citizenship.

A.   Plaintiff's Witness And Deposition
Testimony

At Trial, Plaintiff offered testimony from his
older brother, Eliseo Vega Rodriguez ("Eliseo"), and
his younger sister Esperanza Lopez Alvarado
("Esperanza") in support of his claim for derivative
citizenship.   Plaintiff has also submitted excerpts

---

[12] Specifically, Plaintiff submits testimony
establishing that Agustin came to Mexico from the
United States during the Great Depression.   Given that
Agustin was born in 1921, this is sufficient to prove
his physical presence in the United States for five
years prior to his fourteenth birthday.   Moreover, the
Government did not argue against this claim that
Agustin was present in the United States for at least
five years when he was a child.   Indeed, the majority
of Plaintiff's evidence here goes towards proving
Agustin's presence in the United States from 1935 to
1959, and the main contention in this Action thus
appears to be whether Plaintiff can prove Agustin was
physically present in the United States for a period of
five years between 1935 to 1959.

from Carrera and Banda's deposition testimony in
support of his citizenship claim.

As noted below, Plaintiff has not produced any
documentary evidence in support of this citizenship
claim.  Therefore, the witness and deposition testimony
are the main pieces of evidence that the Court
considers in determining Plaintiff's citizenship claim.
However, the Court finds that this testimony is
insufficient to provide a factual basis of Agustin's
physical presence in the United States, and therefore
fails to establish that it is more likely than not that
Agustin was physically present in the United States for
a period of five years between the years of 1935 and
1959.

1.  <u>Eliseo and Esperanza's Trial Testimony</u>

Plaintiff's first witness, his older brother
Eliseo, testified about his childhood and family life
in El Zapote and Guadalajara, Mexico.[13]  Plaintiff
argues this testimony establishes that Agustin traveled
to the United States each year beginning in the 1940s,
living and working in the United States each year for
many months at a time.

Eliseo was born in 1942 in El Zapote, Mexico.
Eliseo testified that he lived in El Zapote for five to
six years and then moved to Guadalajara, Mexico with
his family, remaining there for roughly eight to ten

---

[13] Agustin is also Eliseo's father.

17

years.  Eliseo testified that during this time, Agustin
would travel back and forth from their home in Mexico
to the United States, leaving the family for periods at
a time.  However, Eliseo could not list any of the
specific dates in which Agustin allegedly left the
family to go work in the United States, nor did he have
firsthand, personal knowledge of Agustin's whereabouts
when he was absent during this time.  Therefore, the
Court finds that this evidence fails to establish that
Agustin was actually in the United States during this
time period, as Eliseo's testimony cannot establish
Agustin's exact whereabouts.

Eliseo also testified that he accompanied Agustin
into the United States to work alongside him in the
fields.  Specifically, Eliseo testified that starting
from around the time he was six years old, Agustin
would take him and other family members into Texas and
they would stay there for two to three months, maybe
four months, working in the fields.  Eliseo said this
occurred for six to seven years, when he and his family
were living in El Zapote and then while they were
living in Guadalajara.

The Court finds this testimony also fails to
establish Agustin's physical presence during this time,
as Eliseo's testimony did not contain specific dates
and details of these alleged trips.  Eliseo could not
definitively state the years in which he accompanied
his father to the United States, nor could he remember

18

exactly how long they stayed there.  For example, when asked by Plaintiff's Counsel about these trips and Eliseo's time in the United States, Eliseo responded that it was tough to remember dates and specifics, as the events occurred so long ago.

Moreover, Eliseo's testimony is contradicted by Carrera's deposition testimony, as she states that Agustin did not take any of his children back with him to the United States to work as a bracero. [Carrera Dep. at 45:14-17.]  While the Court acknowledges that the underlying factual basis for Carrera's statement is unclear, the Court finds that her statement still raises some doubts here as to the overall accuracy of Eliseo's testimony.

Eliseo's testimony here is also inconsistent with his prior, sworn statement.  In 2008, Connie A. Gadell-Newtwon, a third-year law student at Penn State-Dickenson School of Law, prepared a sworn declaration by Eliseo that contained statements regarding Agustin's work in the United States during the 1940s and 1950s, a declaration that was subsequently submitted to the IJ in support of Plaintiff during his initial removal action. [Ex. 14 at 000105, 000173.]  This affidavit was made after speaking with Eliseo and contains his statement and signature, but makes no mention of Eliseo's travels to the United States with Agustin to work in the fields. [Ex. 14 at 000105.]  The Court finds that this omission and inconsistency also raises

19

1   doubts as to the overall accuracy and credibility of
2   Eliseo's testimony.  See United States v. McLaughlin,
3   663 F.2d 949, 952 (9th Cir. 1982)(noting that prior
4   inconsistent statements may affect the credibility of a
5   witness).
6       Furthermore, even if the Court were to find
7   Eliseo's testimony regarding his travels with Agustin
8   to the United States to be completely accurate, it
9   would still only place Agustin in the United States for
10  a maximum of twenty-eight months between the years of
11  1948 and 1959, well below the statutory physical
12  presence requirement necessary here for deriving
13  citizenship.
14      Finally, Eliseo testified that Agustin would send
15  back money and gifts to the family while they were
16  living in El Zapote and Guadalajara.  However, the
17  Court finds that the fact that Agustin sent gifts and
18  money does not necessarily correlate to his physical
19  presence in the United States, nor does it prove that
20  Agustin was present in the United States for the
21  requisite amount of time here.  Therefore, the Court
22  finds that this testimony is not sufficient to
23  establish Agustin's physical presence in the United
24  States.
25      Plaintiff's second witness, his younger sister
26  Esperanza, was born on May 18, 1956, in Guadalajara,
27  Mexico.  Given that the relevant time period here is
28  only from 1921 to 1959, the Court finds that

Esperanza's testimony cannot lay a strong foundation as
to Agustin's location and presence in the United States
during this time period.[14]   In fact, during her cross-
examination, Esperanza testified that she had no memory
of any events that occurred between the years of 1956
and 1959.   The Court finds that Esperanza's testimony
is therefore also insufficient to establish Agustin's
physical presence, as she cannot remember events that
took place prior to Plaintiff's birth in 1959 and her
testimony does not contain any facts or evidence to
support Plaintiff's derivative citizenship claim.

    The Court also finds that the testimony of both
Eliseo and Esperanza carries with it a degree of bias,
as both witnesses are related to Plaintiff.   <u>See</u>
<u>Huffington v. Nuth</u>, 140 F.3d 572, 581-82 (4th Cir.
1998).   Given the nature of their relationship to
Plaintiff, along with the factual deficiencies present
in their testimony, the Court finds that the testimony
of these two witnesses is not credible.   <u>See, e.g.</u>,
<u>Romero v. Tansy</u>, 46 F.3d 1024, 1030 (10th Cir.
1995)(noting that the fact a witness is a relative of a

_____

    [14] Plaintiff's Counsel sought to elicit testimony
from Esperanza regarding previous statements that had
been made by Agustin and Agustin's friends regarding
any time he had spent in the United States. The
Government objected to these questions on the basis of
hearsay, and the Court excluded these questions and any
potential responses for the reasons discussed above.

1  party may ultimately affect the credibility of his or
2  her testimony).

3      Given the credibility issues here and the fact that
4  Eliseo and Esperanza's testimony does not put forth
5  sufficient facts to support Plaintiff's contention that
6  Agustin was physically present in the United States for
7  five years during the time period of 1935 to 1959, the
8  Court finds that Eliseo and Esperanza's testimony does
9  not establish that Agustin was physically present in
10  the United States for the required five years in order
11  for Plaintiff to have derived United States
12  citizenship.

13                  2.  <u>Deposition Testimony</u>

14      Plaintiff also submits deposition testimony from
15  Carrera and Banda as proof of Agustin's physical
16  presence in the United States for at least five years
17  during the years of 1935 to 1959.  The Court finds that
18  this deposition testimony is also insufficient to
19  establish Agustin's physical presence.

20      Carrera lived in El Zapote, Mexico from the early
21  1930s until roughly 1964 and testified that Agustin and
22  her husband were close, referring to them as
23  "compadres," or friends. [Carrera Dep., Pages 21:12-17,
24  29:6-12.]  While Carrera may have known Agustin and his
25  family during this time, the Court finds that her
26  testimony contains only vague references to Agustin's
27  occupation as a "bracero" and she does not provide
28  concrete facts, dates, or locations regarding his

alleged presence in the United States.   In particular,
Carrera testified she did not know any of the exact
locations in the United States where Agustin may have
worked, and when asked by Plaintiff's counsel where
Agustin worked in the 1940s and 1950s, Carrera
responded "[t]hat I don't know." [Carrera Dep., Pages
34:22-25; 41:24-42:2.]   Moreover, Carrera testified
that everything she knew about the Bracero Program was
based on what she had been told by friends or family
and that she did not know the number of years Agustin
may have been involved in this program. [Carrera Dep.,
64:12-23.]

     Banda also lived in El Zapote, Mexico in the 1940s
and 1950s and testified that she knew Agustin and his
family during this time period. [Banda Dep., Pages
15:21-22, 18:18-19.]   However, Banda states she never
personally talked to Agustin about his work in the
United States, and the Court finds that her testimony
also does not contain specific details as to the amount
of time he allegedly spent in the United States during
this time period. [Banda Dep., 19:12-21.]

     Ultimately, the Court finds that neither Carrera
nor Banda have personal knowledge of the specifics
regarding Agustin's alleged travels or work in the
United States.   Both of these witnesses resided in
Mexico during the years in question, and did not
personally see Agustin in the United States.
Therefore, the Court finds that these individuals do

not have personal knowledge of Agustin's whereabouts
during this time period and their testimony is
insufficient to establish Agustin's physically presence
in the United States between the years of 1935 and
1959.

In addition, both Carrera and Banda acknowledged
that they are related to Plaintiff.  Agustin married
one of Carrera's cousins sometime around 1940, and
Banda states she married one of Agustin's cousins.
[Carrera Dep., 35:5-16; Banda Dep., 18:18-19.]  As
such, this testimony also carries with it a degree of
bias, and the Court finds that this impacts the overall
credibility of their testimony. See Huffington, 140
F.3d at 581-82.

Accordingly, while both the witness and deposition
testimony supports the fact that Agustin left his
hometown to go work, the Court finds that the offered
testimony is insufficient to establish that it was more
likely than not that Agustin spent five years in the
United States between the years of 1935 and 1959.
These witnesses could not state specifics as to the
dates, location and length of time that Agustin
allegedly spent working in the United States, nor do
they offer concrete eyewitness testimony regarding
Agustin's alleged travels or work as a field worker and
a bracero.  Instead, the Court finds that the testimony
provides only vague details regarding Agustin's absence
from his family from time to time each year and that

1  the witnesses believe, without direct knowledge, that
2  he worked as a bracero during this absence.
3      Plaintiff argues that the Court should draw
4  inferences from the witness testimony and evidence
5  submitted to the Court and find that Plaintiff has met
6  his burden here of proving Agustin's physical presence.
7  While Plaintiff is correct that the Court may draw
8  inferences from facts that have been established by the
9  evidence, the Court finds that Plaintiff's argument is
10 without merit, as Plaintiff fails to establish the
11 underlying factual basis regarding Agustin's physical
12 presence in the United States that is necessary here in
13 order to enable the Court to draw these inferences. See
14 also Chau v. U.S. Dept. of Homeland Sec., 424 F. Supp.
15 2d 1159, 1166 (D. Ariz. 2006)(noting that "[w]ithout
16 facts or evidence, the Court cannot infer that
17 [plaintiff's] father met [the derivative citizenship
18 statute's] physical presence requirement," and that
19 "[t]o do otherwise would be to engage in pure
20 speculation").  Therefore, the Court finds that
21 Plaintiff cannot meet his burden of proof by relying
22 solely on inferences, without providing the Court with
23 any direct evidence to establish Agustin's physical
24 presence.
25      B.  Plaintiff's Lack of Documentary Evidence
26     Finally, the Court finds that the fact that
27 Plaintiff has failed to put forth any documentary
28 evidence to establish Agustin's physical presence in

the United States and corroborate the aforementioned testimony supports the finding here that Plaintiff has failed to meet his burden of proof to establish his derivative citizenship.

Plaintiff does not submit any type of documentary evidence in support of his citizenship claim. Specifically, Plaintiff has not produced any of the documents that are listed on the Form N-600 Application for Certificate of Citizenship as documents that a petitioner can use to prove a parent's physical presence in the United States, such as rent receipts, pay stubs, utility bills, tax statements, or affidavits by persons having direct knowledge of the parent's physical presence in the United States. <u>See</u> Form N-600 Application for Certificate of Citizenship. The only real documentary evidence that Plaintiff provides here in support of his claim are Agustin's birth and death certificates.[15] [Exs. 1, 2.] Nevertheless, the place and year of Agustin's birth is not at issue here, nor is it disputed that Agustin passed away in November 2006.

---

[15] The Parties have also filed as Exhibits here various discovery responses by the Parties, a declaration by Plaintiff, the Government's Motion to Transfer this Case to this Court, and the Administrative Record from the Ninth Circuit Court of Appeals that contains the history of this proceeding. However, none of these documents contain documentary evidence of Agustin's physical presence in the United States.

1    Therefore, the Court finds these documents are not
2   relevant to the central issue of whether Agustin was
3   physically present in the United States for five years
4   prior to Plaintiff's birth after Agustin's fourteenth
5   birthday, nor can these documents alone establish
6   Plaintiff's derivative citizenship. See <u>United States</u>
7   <u>v. Ortiz-Diaz</u>, 849 F. Supp. 734, 740 (E.D. Cal.
8   1994)(holding that evidence of defendant's father's
9   birth certificate, indicating he was born in the United
10  States, was not sufficient in and of itself to
11  establish his father's physical presence under the
12  relevant derivative citizenship statute).

13    Plaintiff argues he attempted to obtain documentary
14  evidence of Agustin's presence in the United States and
15  his work as a bracero from various Government agencies,
16  but was unable to do so given the fact that the time
17  period in question here ranges from the 1930s to the
18  1950s, and these agencies no longer have records from
19  that time period in their possession.[16]  However, the
20  Court finds that this does not explain why Plaintiff
21  has failed to put forth any other type of documentary
22  evidence, such as pictures, letters, family
23  memorabilia, or affidavits from individuals that may

24  _____

25    [16] Plaintiff submits three letters from the United
26  States Department of Labor, the United States Postal
    Service, and the California Department of Motor
27  Vehicles, each informing Plaintiff's Counsel that they
28  no longer possess the requested documents. [Exs. 3-5.]

1  have traveled and worked with Agustin in order to help
2  establish his physical presence.

3      Therefore, given this absence of documentary
4  evidence and the overall lack of specific facts to
5  establish Agustin's physical presence in the United
6  States, the Court finds that Plaintiff has not
7  satisfied his burden of proving that the physical
8  presence requirement has been met here. <u>See</u> <u>id.</u>
9  (finding the plaintiff had not met his burden to show
10 derivative citizenship because plaintiff had failed to
11 put forth any evidence or specific facts showing his
12 father was physically present in the United States for
13 the necessary period of time).

14

15 **IV.    Conclusion**

16     The Court finds that Plaintiff has failed to prove
17 by a preponderance of the evidence that Agustin was
18 physically present in the United States for five years
19 after he reached the age of fourteen in 1935 and prior
20 to the year of Plaintiff's birth in 1959.

21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1    Accordingly, the Court finds that Plaintiff has not
2 met his burden of establishing that he meets the
3 requirements under the relevant statute for deriving
4 citizenship from his United States citizen father, and
5 the Court therefore finds in favor of the Government in
6 this Action.

7

8 **IT IS SO ORDERED.**

9
   DATED: January 28, 2011.
10
                                RONALD S.W. LEW
11                   _____

12                   **HONORABLE RONALD S.W. LEW**
                     Senior, U.S. District Court Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28